1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OKSANA B., et al.,

                        Plaintiffs,

       v.

PREMERA BLUE CROSS, et al.,

                       Defendants.

CASE NO. C22-1517 MJP

ORDER GRANTING MOTION FOR ATTORNEYS' FEES

This matter comes before the Court on Plaintiffs' Motion for Attorneys' Fees. (Dkt. No. 41.) Having reviewed the Motion, the Response (Dkt. No. 44), the Reply (Dkt. No. 45), and all supporting materials, the Court GRANTS the Motion.

**BACKGROUND**

In considering the Parties' cross-motions for summary judgment, the Court found that Premera had wrongly denied plan benefits for Plaintiff A.B.'s stay at two different mental health treatment facilities. (Order on Cross-Motions at 14-24 (Dkt. No. 37).) The Court found that Premera abused its discretion by failing to provide reasoned decisions and improperly construing

and applying the Plan's terms. (Id.) And while the Court denied Plaintiffs' Parity Act claim, it did so because their success on the other claims mooted the Parity Act claims. In other words, Plaintiffs achieved a high degree of success in bringing their lawsuit.

Plaintiffs now seek an award of attorneys' fees of $49,552.50. Plaintiffs' counsel identifies a total of 54.7 hours spent by Brian King, the principal attorney, 58.5 hours spent by Andrew Sommers, a law clerk and attorney, and 5.9 hours spent by local counsel, John Wood. (Declaration of Brian S. King (Dkt. No. 41-1).) King seeks approval of a $600/hour rate, which reflects his 38 years in practice and his substantial focus on ERISA litigation. (Id. ¶¶ 3-12.) In support of this request, King also provides a declaration from Marie Casciari, who avers that King's requested hourly rate is "extremely reasonable" and in line with an attorney of King's level of "experience, specialization, knowledge, and reputation." (Declaration of Marie E. Casciari (Dkt. No. 41-5).) Plaintiffs also ask for approval of Somer's rate as a law clerk at $225/hour and $250/hour as an attorney. Somers is a new attorney who graduated in 2023 and performed work on the case as a law clerk before becoming a licensed attorney. (Declaration of Andrew Somers (Dkt. No. 41-2).) Plaintiffs lastly ask for approval of John Wood's hourly rate of $500, which he claims reflects his 31 years in practice, and substantial experience litigating ERISA cases. (Declaration of John Wood (Dkt. No. 41-3).) Premera offers no objections to the rates requested or the hours expended.

## ANALYSIS

### A.     Plaintiffs Entitled to Fees

The first issue the Court must resolve is whether Plaintiffs are entitled to attorneys' fees under ERISA. The Court finds that they are.

ERISA provides the District Court with discretion to award attorneys' fees and costs to either party of an action brought by a plan participant. 29 U.S.C. § 1132(g)(1); Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 256 (2010). In making this discretionary determination, a district court "should" consider the following, non-exclusive five factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

Hummell v. S. E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980). The Court refers to these as the "Hummell factors." The Court's analysis also acknowledges the "general rule, [that] the prevailing party on an ERISA claim is entitled to attorney's fees, 'unless special circumstances would render such an award unjust.'" United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Emps. of ASARCO, Inc., 512 F.3d 555, 564 (9th Cir. 2008) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)). And when applying the Hummell factors, courts "must keep at the forefront ERISA's remedial purposes that should be liberally construed in favor of protecting participants in employee benefit plans." McElwaine v. US W., Inc., 176 F.3d 1167, 1172 (9th Cir. 1999) (internal quotation and citation omitted).

The Court analyzes each of the Hummell factors, all of which favor an award of fees.

**1.      Degree of Culpability or Bad Faith**

The Court finds that Defendants' culpability and bad faith warrants an award of fees.

Because the Ninth Circuit has not defined bad faith or culpability, the Court relies instead on their common understanding and meaning. See Cherry v. Prudential Ins. Co. of Am., No. 21-27 MJP, 2022 WL 3925304, at *2 (W.D. Wash. Aug. 30, 2022). In Cherry, the Court defined "Culpability or culpable conduct . . . as 'meriting condemnation or blame[.]'" Id. And the Court

1    explained that "bad faith denotes intentional deception and dishonesty, or a failure to meet an

2    obligation." <u>Id.</u> The Court continues to find these same definitions appropriate and applies them

3    to this case.

4          The Court's Order on the Cross-Motions provides more than ample evidence of

5    Premera's culpability and bad faith in denying coverage for both of A.B.'s stays at both mental

6    health facilities. First, as to the denial for coverage at Second Nature, the Court concluded

7    Premera "failed to provide any reasoned explanation as to why the Plan's exclusion should be

8    read so expansively or applied to the specific mental health treatment provided by Second

9    Nature." (Order at 14.) The Court explained: "Through all three denials, Premera failed to

10    provide a reasonable interpretation or application of the Plan's exclusion for "wilderness . . .

11    program or activities" to Second Nature." (<u>Id.</u> at 15.) And the Court concluded that Premera

12    failed to provide any analysis or reasoning to justify its construction of the Plan that conflicted

13    with its plain terms. (<u>Id.</u> at 15-17.) These conclusions support a finding that Premera's conduct

14    merits blame and that it failed to meet its obligations as Plan administrator in denying coverage

15    for A.B.'s stay at Second Nature. Second, the Court found that Premera abused its discretion in

16    denying benefits for A.B.'s continued stay at Catalyst. (<u>Id.</u> at 18.) Specifically, the Court

17    concluded that Premera failed to explain how it made its medical-necessity determination and

18    how A.B. had recovered sufficiently to warrant treatment at a lower level. (<u>Id.</u> at 19-20.) This,

19    too, supports a finding of culpability and bad faith.

20          Defendants argue that Premera need only show that it had a "reasonable basis" to deny

21    coverage to justify a finding of good faith. (<u>See</u> Resp. at 2-3.) This argument both misreads the

22    substance of the Court's Order on Cross-Motions, as explained above, and it relies on two

23    distinguishable Ninth Circuit cases.

24

ORDER GRANTING MOTION FOR ATTORNEYS' FEES - 4

First, invoking <u>Cline v. Industrial Maint. Eng'g & Contracting Co.</u>, Defendants argue that so long as Premera had a good faith belief it correctly denied coverage, the Court cannot find bad faith or culpability. (Resp. at 2-3 (citing <u>Cline</u>, 200 F.3d 1223 (9th Cir. 2000). But this case is limited to situations where the plaintiff's claims are dismissed, not where a defendant is found to have violated ERISA. In <u>Cline</u>, the Ninth Circuit affirmed denial of the defendants' request for attorneys' fees after they defeated the plaintiffs' ERISA claims at summary judgment. The Court explained that "in order to avoid a finding of bad faith under the <u>Hummell</u> factors, plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim." <u>Id.</u> at 1236 (citing <u>Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.</u>, 25 F.3d 743, 749 (9th Cir. 1994)). As this quote makes clear, the question is whether the plaintiffs acted improperly in filing suit. This is a distinct question from the one presented here—whether a defendant who has been found to violate ERISA acted with culpability or in bad faith. Nowhere does <u>Cline</u> suggest that a defendant's subjective good faith belief offers a reprieve under this <u>Hummell</u> factor. The Court declines to create such an unsupported rule.

Second, Defendants cite to <u>Simonia v. Glendale Nissan/Infiniti Disability Plan</u> for the concept that a defendant's good reasonable belief can defeat a finding of bad faith or culpability. (Resp. at 2-3 (citing <u>Simonia</u>, 608 F.3d 1118, 1121 (9th Cir. 2010)).) But like <u>Cline</u>, the decision does little to support Defendants' position. In <u>Simonia</u>, the Ninth Circuit found no bad faith in the defendants' decision to file counterclaims to obtain benefits that it believed had been overpaid to the plaintiff. <u>Simonia</u>, 608 F.3d at 1121. In this specific context and on the facts presented, the Court found no bad faith or culpability where the defendant had a "good faith belief that Simonia had been overpaid" and where the defendant stipulated to the dismissal of the counterclaim when it learned that there was no overpayment. <u>Id.</u> This decision did not consider

whether a defendant who wrongly denied benefits might be found to have acted reasonably and therefore in good faith. Instead, it considered whether the defendant, as a counter-plaintiff, had a good faith belief that the counterclaims were valid. That is effectively the same posture as <u>Cline</u>, and it fails to aid Defendants' argument.

Having considered the arguments presented, the Court finds that this factor favors Plaintiffs.

### 2.    Defendants' Ability to Satisfy Fee Award

There is no dispute from Defendants that they have the wherewithal to satisfy the requested award of fees. This supports the award.

### 3.    Deterrent Effect of Fee Award

The Court finds that there is a deterrent effect in awarding fees. While there is no evidence that other plan beneficiaries have been denied similar benefits, that alone is not dispositive. Under <u>Hummel</u>, the question is whether this order will deter Premera in "similar circumstances." <u>Hummell</u>, 634 F.3d at 453. Here, the Court concluded that Premera failed to provide any analysis or reasoning to support its determinations and failed to engage in a meaningful dialogue with the Plaintiffs. The Court believes that its Order contains positive, deterrent effects that should cause Premera to engage more carefully and openly with plan beneficiaries in handling other claims for benefits. And the Court's reasoning applies not just to mental health benefits, but to all of the benefits available to plan participants. This factor favors an award of fees.

### 4.    Plaintiffs' Success Benefits Other Participants

This factor only slightly favors Plaintiffs. Plaintiffs filed suit individually and sought no class-wide relief. And although Plaintiffs sought equitable relief, they failed to provide sufficient evidence and argument to support reformations to the Plan. Similarly, the Court does not believe

it decided a significant issue under ERISA. But, the Court finds that other plan participants may benefit from the Court's Order by reminding Premera of its duty to engage meaningfully with participants and provide reasonable and thorough explanations of any plan denials. This factor, while largely neutral, slightly favors an award of fees.

### 5. Relative Merits of Parties' Position

This final factor also supports an award of fees. Plaintiffs were largely victorious on their claims, and the Court found no merit in any of Defendants' opposition. The balance here strongly favors Plaintiffs.

*     *     *

On balance, the <u>Hummell</u> factors strongly favor an award of fees, and the Court finds that an award is appropriate and proper on the record before it.

### B. Fees Requested are Reasonable

The Court finds that the $49,552.50 fee request is appropriate and reflects the product of counsel's reasonable rates and the time spent.

"The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." <u>Fox v. Vice</u>, 563 U.S. 826, 838 (2011). To determine the fee award for a prevailing party, the Court begins by calculating a lodestar "by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." <u>Fischer v. SJB-P.D. Inc.</u>, 214 F.3d 1115, 1119 (9th Cir. 2000) (citing <u>Hensley</u>, 461 U.S. at 433). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." <u>Hensley</u>, 461 U.S. at 435. The Court determines the hourly rate by considering the "evidence produced by the parties, including fee rates of other attorneys in similar practices, awards in comparable cases, counsel's experience and reputation level, and the market rates, as well as two additional <u>Kerr</u> factors: the novelty/difficulty of the issues and the preclusion of other work." <u>Dang v.</u>

1    Cross, 422 F.3d 800, 814 (9th Cir. 2005). In deciding the number of hours "reasonably

2    expended," the Court considers whether the time on matter that was "excessive, redundant, or

3    otherwise unnecessary." Hensley, 461 U.S. at 434. The requesting attorney must provide

4    reasonable documentation of the work performed to enable this determination. See id. at 433.

5          Plaintiffs' proposed lodestar calculation produces an attorneys' fee that is both reasonable

6    and supported, and Defendants do not oppose the amount requested. First, the Court finds that

7    the amount of time spent on this relatively complex case is reasonable—just 119.1 hours in total.

8    Second, the Court finds the rates claimed to be reasonable and in line with those of similar skill.

9    As to King, Plaintiffs have provided evidence that his $600/hour rate is justified by his skill and

10   experience, and by reference to a declaration from another attorney who avers that his rates are

11   reasonable. As to Somers, Plaintiffs provide evidence of his limited experience as a newly-barred

12   attorney. And while they provide no evidence about whether his rates are comparable to those of

13   his same experience, the Court finds the $225/hour and $250/hour rates reasonable given the

14   complexity of the matters and the relative rates of King and Wood. And as to Wood, his

15   experience is in line with King's, which makes his $500/hour rate reasonable.

16         The Court therefore AWARDS Plaintiffs $49,552.50 as attorneys' fees.

17   **C.    Prejudgment Interest**

18         Plaintiffs are also entitled to prejudgment interest.

19         A district court may award prejudgment interest in ERISA cases to compensate a plaintiff

20   for the loss she incurred as a result of the defendant's nonpayment of benefits. Dishman v.

21   UNUM Life Ins. Co. of Am., 269 F.3d 974, 988 (9th Cir. 2001). Whether to award prejudgment

22   interest "is a question of fairness, lying within the court's sound discretion, to be answered by

23   balancing the equities." Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan,

24

1  750 F.2d 1458, 1465 (9th Cir. 1985) (quotation omitted). "Generally, the interest rate prescribed

2  for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-

3  judgment interest unless the trial judge finds, on substantial evidence, that the equities of that

4  particular case require a different rate." <u>Blankenship v. Liberty Life Assur. Co. of Bos.</u>, 486 F.3d

5  620, 628 (9th Cir. 2007) (citation and quotation omitted).

6      The Court here awards prejudgment interest. Doing so is fair, particularly where the

7  Plaintiffs were wrongly denied benefits and should be compensated for the late provision of

8  those benefits. The Court grants prejudgment interest at a rate of 5.01%, which is the weekly

9  average 1-year constant maturity Treasury yield, as published by the Board of Governors of the

10  Federal Reserve System, for the calendar week preceding the date of the judgment—here, the

11  week ending Dec. 15, 2023. <u>See</u> 28 U.S.C. § 1961(a). The Court also orders that the interest

12  calculation be performed from the date each benefit was wrongly denied: (1) October 24, 2019

13  for Second Nature and (2) July 5, 2019 for Catalyst. Per 28 U.S.C. § 1961(b), the interest must

14  be "computed daily" from these dates and "compounded annually." Because the Court does not

15  know the precise amounts due, the Court provides this methodology and orders the Parties to

16  apply it to the precise sums due once determined.

17  **D.    Costs**

18      The Court also awards Plaintiffs the $400 filing fee pursuant to 28 U.S.C. § 1920 and 29

19  U.S.C. § 1132(g)(1).

20                                  **CONCLUSION**

21      The Court finds that Plaintiffs are entitled to attorneys' fees, costs, and prejudgment

22  interest. The Court finds that the requested amount of fees and costs are appropriate. It

23

24

AWARDS Plaintiffs $49,552.50 in attorneys' fees and $400 in costs. The Court also AWARDS

prejudgment interest to be calculated according to the methodology set forth above.

The clerk is ordered to provide copies of this order to all counsel.

Dated February 9, 2024.

Marsha J. Pechman
United States Senior District Judge